IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| BERNARD TOSHIRO HAZELTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 322-110 |
| | ) |
| STEVIE WOOTEN, Transport Sergeant, and | ) |
| DAVE CHENEY, Medical Doctor, | ) |
| | ) |
| Defendants. | ) |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently incarcerated at Telfair State Prison ("TSP") in McRae, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case brought pursuant to 42 U.S.C. § 1983. Defendant Wooten filed a pre-answer motion to dismiss, (doc. no. 28), which the Court recommended granting in a Report and Recommendation dated February 28, 2023, (doc. no. 39), based upon finding Plaintiff had not exhausted his administrative remedies prior to filing this lawsuit. On March 3, 2023, after noting he had raised the affirmative defense of failure to exhaust in his answer, Defendant Cheney filed his own motion to dismiss that "adopts and incorporates" the arguments raised in Defendant Wooten's motion to dismiss. (See doc. no. 41.) Thus, for ease of reference, although the instant Report and Recommendation pertains to Defendant Cheney's motion to dismiss, the Court cites herein to the briefing on Defendant Wooten's motion to dismiss, found at docket entry 28.

Plaintiff has been afforded the opportunity to respond to Defendant Cheney's motion but has not filed any opposition. However, just as the Court cites to Defendant Wooten's briefing herein, where appropriate, the Court likewise cites to Plaintiff's opposition to Defendant Wooten's motion, found at docket entry 36. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant Cheney's motion to dismiss be **GRANTED**.

I.   BACKGROUND

A.   Procedural History

Plaintiff signed his original complaint on September 4, 2022, (doc. no. 1, p. 11), and his amended complaint on September 30, 2022, (doc. no. 7, p. 12), originally suing both Defendants in their individual and official capacities. As Plaintiff is proceeding IFP, the Court screened the amended complaint, dismissed all official capacity claims for monetary damages, and allowed an Eighth Amendment claim for deliberate indifference to proceed based on Plaintiff's allegations regarding treatment for his injured knee. (See doc. nos. 9 - 11, 24.) Defendants waived personal service, (doc. nos. 18, 19), and in lieu of an answer, Defendant Wooten filed a pre-answer motion to dismiss. (Doc. no. 28.) Defendant Cheney filed an answer. (Doc. no. 26.) Both Defendants also filed a motion to stay discovery pending resolution of Defendant Wooten's motion to dismiss, which the Court granted. (Doc. nos. 29, 34.)

In his motion to dismiss, Defendant Cheney argues the case against him should be dismissed in its entirety because Plaintiff failed to properly exhaust his administrative remedies prior to filing his complaint. (Doc. no. 28-1, pp. 6-10.) Plaintiff does not contest he failed to exhaust his administrative remedies prior to commencing this case by filing the

original complaint, but he maintains that because his administrative remedies were exhausted by the time the amended complaint "was accepted and granted," the motion to dismiss should be denied. (Doc. no. 36, p. 8.)

### B. Allegations in Amended Complaint

Plaintiff tripped while going up the stairs to his cell at TSP and injured his right knee. (Doc. no. 7, p. 3.) Defendant Cheney examined Plaintiff sometime in September 2020 and informed him that in four to six weeks, Plaintiff would be transported to another prison for an MRI test on his knee. (Id.) After the MRI test on October 19, 2020, a doctor at Reidsville State Prison explained to Plaintiff he had a severe knee injury and if Plaintiff did not have surgery "right away," he "could lose [his] knee." (Id. at 4.) Plaintiff agreed to have surgery and was told he would be brought back in four to six weeks for the procedure. (Id. at 4-5.)

When Plaintiff had not had his surgery six to eight months after agreeing to it, Plaintiff checked with a nurse at TSP about the status of the surgery, only to find out his medical file contained a form purporting to bear Plaintiff's signature that verified he had refused surgery on May 18, 2021. (Id. at 5.) Although a nurse and Defendant Cheney concluded Plaintiff's signature on the refusal of treatment form had been forged, Defendant Cheney told Plaintiff he would have to repeat the whole process to get back on the surgery list, meaning Plaintiff would endure many more months of pain, injury, and medication. (Id. at 5-6.)

### C. Plaintiff's Relevant Grievance History

In support of the motion to dismiss, Defendant Cheney, via incorporation of Defendant Wooten's briefing, produced the affidavit of Anntionette Johnson, Chief Counselor at TSP. (See doc. no. 28-2, Johnson Aff. ¶ 2.) Ms. Johnson is familiar with the Georgia Department of Corrections ("GDC") grievance process, and her responsibilities

3

include acting as the Grievance Coordinator to ensure compliance with the applicable grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. ¶¶ 2, 3.)

Ms. Johnson identified four grievances Plaintiff filed since May 18, 2021, the date Plaintiff allegedly refused transport for treatment on his knee after a doctor had explained the damage revealed in the MRI. (Id. ¶ 11 & Ex. 2; doc. no. 7, p. 5.) Of those four grievances, three relate to the medical treatment for Plaintiff's injured knee.[1] In Grievance Number 325572, submitted June 14, 2021, Plaintiff claimed he missed two appointments for his knee because his signature had been forged on treatment refusal forms. (Johnson Aff. ¶ 12 & Ex. 3 (hereinafter doc. no. 28-5).) The Warden denied that grievance, and Plaintiff was informed of the denial over one year later on August 31, 2022. (Johnson Aff. ¶ 12 & doc. no. 28-5.) Plaintiff did not file a Central Office Appeal. (Johnson Aff. ¶ 12 & doc. no. 28-5.)

In Grievance Number 341225, submitted July 20, 2022, Plaintiff claimed Defendant Wooten forged Plaintiff's signature on a treatment refusal form that caused him to miss having surgery on his knee. (Johnson Aff. ¶ 14 & Ex. 5 (hereinafter doc. no. 28-7).) Plaintiff further stated that his request to be sent to a "real hospital" for surgery had been refused. (Doc. no. 28-7, p. 2.) Plaintiff explained he had not filed the grievance within the

---

[1] Grievance Number 333193, submitted on December 14, 2021, alleged Plaintiff had personal property taken, destroyed, or damaged during a prison shakedown. (Johnson Aff. ¶ 13 & Ex. 4.) Although Plaintiff did file a Central Office Appeal for this grievance, there is no argument that Grievance Number 333193 relates to the events forming the basis of this lawsuit, or that it otherwise has anything to do with the issue of exhaustion raised in the instant motion to dismiss. In any event, a grievance unrelated to the claims in this lawsuit cannot satisfy the exhaustion requirement. See Daniels v. Allen, Civ. Act. No. 6:17-cv-45, 2020 WL 401973, at *2 (S.D. Ga. Jan. 3, 2020), adopted by 2020 WL 402286 (S.D. Ga. Jan. 23, 2020).

required ten-day time frame because he believed his surgery would still take place. (Id.) The Warden denied that grievance as untimely, and Plaintiff was informed of the denial on August 10, 2022. (Johnson Aff. ¶ 14 & doc. no. 28-7.) Plaintiff did not file a Central Office Appeal. (Johnson Aff. ¶ 14 & doc. no. 28-7.)

In Grievance Number 342048, submitted on August 9, 2022, Plaintiff alleged: (1) Defendant Wooten caused Plaintiff to miss having surgery on his right knee on May 18, 2021, because he forged Plaintiff's signature on a medical treatment refusal form, and (2) a nurse had lied when she refused to process Plaintiff's request for his medical records because of insufficient funds in his inmate account. (Johnson Aff. ¶ 15 & Ex. 6 (hereinafter doc. no. 28-8, p. 4).) The Warden rejected the grievance as violative of the standard policy that a grievance contain only one issue, and Plaintiff was informed of the rejection on August 22, 2022. (Doc. no. 7, Ex. C-3; Johnson Aff. ¶ 15 & doc. no. 28-8, pp. 3, 5.) Plaintiff filed a Central Office Appeal on August 23, 2022, and on September 28, 2022, the Central Office issued its response. (Doc. no. 7, Ex. C-2; Johnson Aff. ¶ 15 & doc. no. 28-8, p. 1.) That response concluded Plaintiff had violated policy by raising more than one issue in his grievance, and therefore, the merits of Grievance Number 342048 were not addressed. (Johnson Aff. ¶ 15 & doc. no. 28-8, p. 1.) Plaintiff received the Central Office response on September 30, 2022. (Johnson Aff. ¶ 15 & doc. no. 28-8, p. 1.)

II.     **DISCUSSION**

A.      **The Legal Framework for Determining Exhaustion**

Where, as here, a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both

5

parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that the plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Eleventh Circuit, "brought" as used in this section of the PLRA means "the filing or commencement of a lawsuit, not . . . its continuation." Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*); see also Goebert v. Lee Cnty., 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."). Because exhaustion of administrative remedies is a

"precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation." Ross v. Blake, 578 U.S. 632, 643-44 (2016). Here, Plaintiff makes no

allegation or argument that any of these three scenarios apply to his situation. Indeed, he states in his amended complaint he filed a grievance and an appeal. (Doc. no. 7, pp. 8-9.)

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### B.    The Administrative Grievance Procedure

The administrative grievance procedure applicable to this case is GDC's SOP Policy Number ("PN") 227.02, which became effective May 10, 2019. (Johnson Aff. ¶ 3 & Ex. 1 (doc. no. 28-3).) The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor. Id. § IV(C)(1)(c) & (d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a Central Office Appeal. Id. §§ IV(C)(1)(e)(v) & (C)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a Central Office Appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § (C)(2)(e). If the Central Office Appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § IV(C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second Central Office Appeal. Id.

### C. Plaintiff's Failure to Exhaust

Plaintiff signed his original complaint on September 4, 2022, and the Clerk of Court filed that pleading on September 12, 2022. (Doc. no. 1, pp. 1, 11.) Plaintiff signed his amended complaint on September 30, 2022, and the Clerk of Court filed that pleading on October 11, 2022. (Doc. no. 7, pp. 1, 12.) As described in detail above, Plaintiff's grievance history establishes he filed three grievances related to events forming the basis of this lawsuit, Grievance Numbers 325572, 341225, and 342048. The record confirms, and Plaintiff does not contest, he failed to file a Central Office Appeal regarding Grievance

9

Numbers 325572 and 341225.[2]  However, Plaintiff argues that he exhausted his administrative remedies because as to Grievance Number 342048, he did file an appeal, and he received a response to that appeal prior to when his amended complaint – signed September 30 and filed October 11, 2022 - "was accepted and granted."  (Doc. no. 36, p. 8.)

Taking Plaintiff's allegations as true that he exhausted his administrative remedies, and as Defendant concedes dismissal under step one of Turner is not proper, (doc. no. 28-1, p. 5), the Court moves to the second step of Turner and determines, as explained in detail below, that dismissal is appropriate.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and Defendant Cheney has the burden to prove Plaintiff did not exhaust administrative remedies.  See Maldonado v. Baker Cnty. Sheriff's Office, 23 F.4th 1299, 1307 (11th Cir. 2022).  Here, given that the parties agree Plaintiff filed a Central Office Appeal as to Grievance Number 342048, the pivotal factual issue is whether Plaintiff filed his lawsuit prior to receiving a response to the appeal he admittedly filed.  He did, and therefore the Court concludes Defendant Cheney has carried the burden to show Plaintiff did not exhaust his administrative remedies.

The crux of Plaintiff's argument is that because he received a response to his Central Office Appeal of Grievance Number 342048 after he filed his original complaint but before his amended complaint "was accepted and granted" on October 11, 2022, the date the Clerk

---

[2]The record does not explain why Plaintiff failed to receive a response to Grievance Number 325572 until over one year after it was filed.  However, the policy makes clear that if the time allowed for a response to the grievance has expired without action, the offender may proceed with a Central Office Appeal.  PN 227.02 § IV(C)(2).  Plaintiff did not file an appeal when the forty days allowed for the response expired, and when he did receive the response to Grievance Number 325572 on August 31, 2022, he did not file an appeal.  (Johnson Aff. ¶ 12.)

of Court filed the amended pleading, the motion to dismiss should be denied. This argument fails.

"The time the statute sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied." Goebert, 510 F.3d at 1324. Plaintiff "brought" this legal action when he filed his original complaint, bearing a signature date of September 4, 2022. See Harris, 216 F.3d at 974. Under the "prison mailbox rule," Plaintiff's complaint is deemed filed when delivered to prison officials for mailing, and the signature date is assumed to be the day of delivery to prison officials. See Houston v. Lack, 487 U.S. 266, 275-76 (1988). Even using the date the Clerk of Court opened this case on the docket on September 12, 2022, makes no difference to the analysis. Any filing date prior to when the Central Office issued its response to the appeal on Grievance Number 342048 on September 28, 2022, results in the conclusion Plaintiff failed to exhaust his administrative remedies as required by the PLRA. See Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2007) (*per curiam*) (affirming dismissal where prisoner filed lawsuit prior to receiving final decision on grievance appeal).

As the Chief United States District Judge for the Southern District of Georgia has ruled, "[B]ecause 'the only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint,' the subsequent issuance of the Appeal Decision after the initiation of this case 'cannot cure the exhaustion defect.'" Mack v. Miles, CV 117-061, doc. no. 19, pp. 5-6 (S.D. Ga. Apr. 26, 2018) (Hall, C.J.) (citing Harris, 216 F.3d at 981 and Smith, 491 F. App'x at 83). Moreover, amending a complaint cannot cure the exhaustion defect because such actions do "not change

11

the important historical fact: [Plaintiff's] administrative remedies were unexhausted when he filed his original complaint." Smith, 491 F. App'x at 83. Because Plaintiff did not exhaust his administrative remedies prior to initiating this lawsuit, the Court finds Defendant Cheney has met his burden to show Plaintiff did not satisfy the PLRA's exhaustion requirement prior to filing this lawsuit, and the motion to dismiss should be granted. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

Moreover, not only was Grievance Number 342048 rejected by the Central Office after commencement of the lawsuit, but it was rejected because Plaintiff did not follow the proper procedure for filing a grievance. Specifically, the Central Office refused to address the grievance because Plaintiff violated the single issue/incident requirement of PN 227.02 § IV(C)(1)(e)(ii). The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules. Johnson, 418 F.3d at 1159.

The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the

prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Johnson, 418 F.3d at 1159 (allowing an untimely grievance to satisfy exhaustion requirement would defeat aims of PLRA to review the merits of a prisoner's claim, does "not spur the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy"). Therefore, the Court finds that this procedurally improper grievance, even if exhausted through the grievance procedure prior to commencing this lawsuit, would not have satisfied the PLRA's exhaustion requirement.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant Cheney's motion to dismiss be **GRANTED**, (doc. no. 41), and that all claims against him be **DISMISSED** without prejudice. Should the presiding District Judge adopt this recommendation and the February 28, 2023 recommendation to grant Defendant Wooten's motion to dismiss, the Court also **REPORTS** and **RECOMMENDS** this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 24th day of March, 2023, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA